ZURICH-AMERICAN INSURANCE COMPANY v AMERISURE
INSURANCE COMPANY

Docket No. 166521. Submitted October 10, 1995, at Detroit. Decided
February 20, 1996, at 9:10 A.M. Leave to appeal sought.

Zurich-American Insurance Company brought an action in the
Hillsdale Circuit Court against Amerisure Insurance Company,
seeking a declaration relative to the parties' respective liability
for insurance coverage. The plaintiff insured a truck tractor
that was owned by K & R Trucking Company under a policy
that provided coverage when the tractor was not attached to a
trailer and was not being used in the business of the lessee of
the tractor, Cimarron Express, Inc. The lease, pursuant to
regulations of the Interstate Commerce Commission, provided
that Cimarron had exclusive possession, control, and use of the
tractor while it was being used in Cimarron's interstate truck-
ing business, but further provided that K & R would provide a
driver and would keep the tractor in roadworthy condition and
repair. The tractor, while being driven without a trailer by a K
& R employee to a repair facility for work on the heater, was
involved in an accident that resulted in the death of another
motorist. When a wrongful death action was brought against K
& R and its employee, K & R tendered the defense of that
action to the plaintiff. When the defendant refused the plain-
tiff's demand that it assume the defense of the wrongful death
action, the plaintiff filed this action seeking a declaration that
the defendant was obligated to provide primary insurance
coverage or, in the alternative, that the defendant share in the
cost of the defense and indemnification of K & R and its
employee. The court, Gordon W. Britten, J., granted summary
disposition for the defendant, holding that the defendant's
policy did not afford coverage under the circumstances because
the tractor was not being used in the defendant's business at
the time of the accident. The plaintiff appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Insurance § 724.
See ALR Index under Insurance and Insurance Companies.

1. Whether the defendant's policy affords coverage under the circumstances depends on whether K. & R was an insured under that policy. Although the defendant's policy provided that the owner of a motor vehicle leased by Cimarron was an insured if the vehicle was being used in Cimarron's business, the trial court erred in holding that K & R could be an insured only under that circumstance. The defendant's policy also provided that permissive users of the vehicle were covered insureds except under certain enumerated circumstances. The exception to the permissive user coverage for persons using the vehicle while in the process of selling, servicing, repairing, or parking of the vehicle was not applicable to K & R merely because it had the contractual obligation to keep the vehicle in roadworthy condition and repair and the vehicle was being taken to a repair facility at the time of the accident. Accordingly, because K & R was a permissive user and none of the exceptions applied, the defendant's policy afforded coverage under these circumstances.

2. The plaintiff's policy provided coverage for all sums that K & R became legally obligated to pay arising out of the ownership, maintenance, or use of the vehicle, but denied coverage where the vehicle was being used in the business of the lessee of the vehicle. Because it is undisputed that the tractor was not being used in Cimarron's business of hauling freight at the time of the accident, the plaintiff's policy also afforded coverage at the time of the accident.

3. Each policy indicated that it provided primary insurance coverage. The defendant's policy also included a separate endorsement in compliance with ICC regulations that also provided that it was primary insurance and that no provision in the policy could relieve the insurer of liability within the limits of liability. However, that ICC endorsement has only the effect of negating any limiting provisions in the policy to which it is attached; it does not have the effect of making the policy to which it is attached primary with respect to any other policies that are applicable to a particular claim and that, by their own terms, indicate that they are also primary insurance.

4. Each policy provides that where there is other insurance that applies to a loss on the same basis, each insurer will contribute to the liability for the loss in the proportion of its coverage to the total coverage. Accordingly, because each policy provides primary coverage, allocation of the total liability between the plaintiff and the defendant should be in the proportion of their respective coverages to the total coverage.

Order vacated; case remanded.

INSURANCE — MOTOR CARRIERS — LEASED VEHICLES — INTERSTATE
    COMMERCE COMMISSION — PRIMARY INSURANCE.
    The special endorsement that is required by the regulations of
    the Interstate Commerce Commission to be included in insur-
    ance policies covering leased motor vehicles used in interstate
    commerce under an ICC certificate and that require that such
    insurance be primary and that there can be no provision in the
    policy that relieves the insurer from liability within the policy
    limits has the effect of deleting any limiting clauses in the
    policy to which it is attached, but it does not make the policy to
    which it is attached primary with respect to other policies
    covering the same event that also provide, by their own terms,
    that they are primary insurance (49 CFR 1057.12[c]).

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*),
for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker,
P.C.* (by *Judith A. Moskus* and *Robert D. Gold-
stein*), for the defendant.

Before: CORRIGAN, P.J., and HOEKSTRA and P. E.
DEEGAN,* JJ.

CORRIGAN, P.J. Plaintiff Zurich-American Insur-
ance Company brought this declaratory action
against defendant Amerisure Insurance Company
to determine the extent of the parties' liability, if
any, under their respective insurance policies. The
trial court granted defendant's motion for sum-
mary disposition, finding that plaintiff was solely
liable under its policy of insurance. Plaintiff ap-
peals as of right. We vacate the trial court's order
and remand for further proceedings.

I

The underlying facts are not in dispute. Zurich's
insured, K & R Trucking Company, was the owner
of a 1980 International truck tractor. On July 27,

* Circuit judge, sitting on the Court of Appeals by assignment.

1987, K & R leased the tractor to Cimarron Express, Inc., a carrier operating under an Interstate Commerce Commission permit. The lease had no set expiration date, but was subject to cancellation by either party at any time by written notice. Under the terms of the lease, as required by federal regulations, Cimarron was granted exclusive possession, use, and control of the tractor for use in Cimarron's interstate trucking business. Cimarron also agreed to assume full responsibility for the operation of the equipment. The lease, however, required K & R to provide a driver for the tractor and to keep the tractor in "roadworthy condition and repair."

On January 2, 1988, while the lease was in effect, the tractor was involved in an accident with another motorist, Barbara Jean Travis, who died from her injuries. The tractor was insured under two different insurance policies at the time of the accident. The tractor was insured under a trucker's policy issued by Amerisure to Cimarron and also under a "bobtail" policy issued by Zurich to K & R that provided coverage when the tractor was not attached to any trailer and was not being used in Cimarron's business. At the time of the accident, the tractor was not attached to any trailer and was being driven by Kevin Pitts, an employee of K & R, to a facility in Ohio for repair of the heater motor.

After the accident, the personal representative of Barbara Travis' estate filed a lawsuit against both Pitts and K & R Trucking. K & R tendered defense of the action to its insurer, Zurich. Zurich thereafter demanded that Cimarron's insurer, Amerisure, assume the defense of the action, but Amerisure rejected that demand. Zurich then commenced this declaratory action against Amerisure, seeking a determination that Amerisure was "obli-

gated to provide primary insurance coverage to Kevin Pitts and K & R Trucking" or, alternatively, to share in the defense and indemnification of Pitts and K & R on a pro-rata basis. The parties filed cross motions for summary disposition pursuant to MCR 2.116(C)(10) regarding the issue of coverage. The trial court granted summary disposition for Amerisure, holding that Amerisure's policy did not afford coverage for the accident in question and that Zurich was solely liable for the defense and indemnification of Pitts and K & R under its bobtail policy.

II

The standard for reviewing a motion for summary disposition under MCR 2.116(C)(10) is set forth in *Allstate Ins Co v Freeman,* 432 Mich 656, 662; 443 NW2d 734 (1989):

> In reviewing a grant or denial of summary disposition under MCR 2.116(C)(10), [the court] consider[s] the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion. A motion for summary disposition tests the factual basis for plaintiff's allegations and may be granted only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." MCR 2.116(C)(10); *Vermer v Baraga Area Schools,* 430 Mich 385, 390; 424 NW2d 370 (1988). An insurer may utilize this procedure in a declaratory action . . . .

On appeal, Zurich and Amerisure both contend that their respective insurance policies do not provide coverage for the accident in question. An insurance policy is much the same as any other contract; it is an agreement between the parties. *Auto-Owners Ins Co v Churchman,* 440 Mich 560,

566; 489 NW2d 431 (1992). When presented with a dispute, a court must determine what the parties' agreement is and enforce it. *Fragner v American Community Mutual Ins Co,* 199 Mich App 537, 542-543; 502 NW2d 350 (1993). An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy. *Heniser v Frankenmuth Mutual Ins,* 449 Mich 155, 161; 534 NW2d 502 (1995).

We disagree with the parties' suggestion that a finding of coverage under one policy necessarily implies a lack of coverage under the other policy. Rather, the extent of Zurich's and Amerisure's insurance obligations is governed by the terms of each of their individual policies. See *id.* at 172; *Citizens Ins Co of America v Federated Mutual Ins Co,* 448 Mich 225, 236; 531 NW2d 138 (1995). If both policies provide coverage by their own terms, we must then determine whether one coverage is primary or excess to that of the other. Accordingly, we first will examine each individual policy to determine whether it affords coverage for the accident in question.

### AMERISURE'S POLICY

Part IV, § A.1. of Amerisure's policy states that coverage is afforded for "all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." As Amerisure correctly recognizes, whether its policy affords coverage in this case is dependent upon whether K & R may be considered an "insured." Part IV, § D. of Amerisure's policy defines who is an insured for purposes of part IV, § A.1. and states, in pertinent part:

D. WHO IS INSURED.

1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:

\*    \*    \*

b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.

\*    \*    \*

4. The owner or anyone else from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:

a. Is being used exclusively in your business, and

b. Is being used pursuant to operating rights granted to you by a public authority.

In ruling that Amerisure's policy does not provide coverage for the accident in question, the trial court stated:

Cimarron's policy covered the tractor *only* while the vehicle was being used exclusively in the insured's business and pursuant to the public authority. It was not being so used while K & R was driving the tractor to secure its repair. [Emphasis added.]

We hold that the trial court erred in ruling that coverage exists under Amerisure's policy "only" when the vehicle is being used exclusively in Cimarron's business and pursuant to a public authority. Although part IV, § D.4. of Amerisure's policy states that an owner or anyone from whom a covered vehicle is hired or borrowed is an insured while the vehicle is being used exclusively in Cimarron's business and pursuant to operating rights granted by a public authority, that is not the only provision defining who is "an insured" for

purposes of coverage. As noted above, under part IV, § D.2., a permissive user is also "an insured."

Amerisure does not dispute, and the submitted evidence establishes, that K & R's employee, Kevin Pitts, was a permissive user at the time of the accident.[1] Nonetheless, Amerisure contends that coverage is excluded under part IV, § D.2.b., which excludes coverage for a permissive user where the vehicle is being used by someone "while he or she is working in a business of selling, servicing, repairing or parking autos."

Exclusionary clauses in insurance policies are to be strictly construed. *Farm Bureau Ins Co of Michigan v Stark,* 437 Mich 175, 181; 468 NW2d 498 (1991). Amerisure argues that the exclusion in part IV, § D.2.b. applies because K & R had agreed to keep the tractor in "roadworthy condition and repair" and, at the time of the accident, Pitts was en route to a facility for repair of the tractor. For the exclusion to apply, however, Pitts must have been using the tractor "while . . . working in a business of selling, servicing, repairing or parking autos." Contrary to Amerisure's suggestion, the mere fact that K & R had a contractual obligation to keep the tractor in "roadworthy condition and repair" does not establish that K & R was in the business of servicing or repairing vehicles. The undisputed facts disclose that, at the time of the accident, Pitts was not using the tractor "while . . . working in a business of selling, servicing, repairing or parking autos." On the contrary, he

---

[1] Michigan's financial responsibility act, MCL 257.502 *et seq.*; MSA 9.2202 *et seq.,* requires the owner of a vehicle to provide insurance that covers permissive users of the vehicle. *State Farm Mutual Automobile Ins Co v Snappy Car Rental, Inc,* 196 Mich App 143, 147; 492 NW2d 500 (1992). A permissive user includes anyone using a motor vehicle with the express or implied permission of the named insured. MCL 257.520(b)(2); MSA 9.2220(b)(2). Cimarron is an owner of the vehicle in question because it leased the vehicle for a period in excess of thirty days. See MCL 500.3101(2)(g); MSA 24.13101(2)(g).

was driving the vehicle to a repair facility so that it could be repaired by someone else. We conclude, therefore, that the exclusion of part IV, § D.2.b. is not applicable.

Amerisure does not cite any other provision in its policy that purports to deny coverage for the accident in question. Nor do any of the cases cited by Amerisure support its contention that its policy does not afford coverage.[2] Accordingly, because Pitts was a permissive user of the tractor at the time of the accident, we conclude that he was a covered insured under Amerisure's policy.

Zurich also argues that any attempt by Amerisure to exclude coverage would contravene Michigan's no-fault act. MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.* However, because we have determined that Amerisure's policy provides coverage, it is not necessary to address this issue.[3]

### ZURICH'S POLICY

The policy issued by Zurich to K & R provides coverage for "all sums which [K & R] shall become legally obligated to pay as damages because of

---

[2] In *Acceptance Ins Co v Canter,* 927 F2d 1026 (CA 8, 1991), the court found that coverage *did* exist under a trucker's policy. The only issue in that case was whether the coverage was primary or excess. The cases of *Reeves v B & P Motor Lines, Inc,* 82 NC App 562; 346 SE2d 673 (1986), and *Grimes v Nationwide Mutual Ins Co,* 705 SW2d 926 (Ky App, 1985), both address only the applicability of a bobtail policy, not a trucker's policy of the type issued by Amerisure in this case. Finally, while *Carolina Casualty Ins Co v Transport Indemnity Co,* 533 F Supp 22 (D SC, 1981), aff'd 676 F2d 690 (CA 4, 1982), involved a finding of no coverage under a trucker's policy, the case was decided on the basis of policy language that differs from the language in the policy issued by Amerisure in this case.

[3] Under *Citizens Ins Co of America v Federated Mutual Ins Co,* 448 Mich 225; 531 NW2d 138 (1995), it appears that Amerisure would be precluded from excluding coverage for the accident in question, unless it can be determined that Cimarron and K & R were multiple owners of the vehicle in question and properly allocated the cost of insurance among their individual policies.

bodily injury . . . arising out of the ownership, maintenance, or use" of the vehicle in question. However, the policy contains the following exclusion upon which Zurich relies in its attempt to deny coverage:

> IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY FOR BODILY INJURY LIABILITY AND FOR PROPERTY DAMAGE LIABILITY, WITH RESPECT TO ANY AUTOMOBILE, DOES NOT APPLY:
>
> \* \* \*
>
> WHILE THE AUTOMOBILE IS BEING USED IN THE BUSINESS OF ANY PERSON OR ORGANIZATION TO WHOM THE AUTOMOBILE IS RENTED.

This exclusion applies if Pitts was using the tractor in Cimarron's business at the time of the accident. Cimarron's business consists of the interstate hauling of freight. It is undisputed that the tractor was not being used to haul any freight by Cimarron at the time of the accident. Indeed, the tractor was not even attached to any trailer. As noted, K & R's employee Pitts was driving the tractor to a repair facility to undergo repairs. On these facts, the trial court correctly ruled that the tractor was not being used in Cimarron's business at the time of the accident. Hence, the exclusion does not apply. Accordingly, because Zurich's policy provides coverage for damages for bodily injury arising out of the use of the tractor, we conclude that Zurich's policy also affords coverage for the accident in question.

III

Having determined that Amerisure's and Zurich's insurance policies both provide coverage for the accident in question, we must now determine

whether one coverage is primary or excess to that of the other.

Zurich's policy contains an "other insurance" clause that states, in pertinent part:

> The insurance afforded by this policy is *primary* insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. [Emphasis added.]

Zurich does not cite, nor have we found, any applicable provision in Zurich's insurance policy stating that the coverage afforded for the accident in question is in excess of or contingent upon the absence of other insurance. Thus, pursuant to its terms, Zurich's policy provides primary coverage.

Amerisure's policy also contains an "other insurance" clause that states, in pertinent part:

> 1. This policy liability coverage is *primary* for any covered auto while hired or borrowed by you and used exclusively in your business and pursuant to operating rights granted to you by a public authority. This policy's liability coverage is *excess* over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker. . . .
>
>       *   *   *
>
> 3. Except as provided in Paragraphs 1 and 2 above, this policy provides *primary* insurance coverage for any covered auto you own and excess insurance for any covered auto you don't own. [Emphasis added.]

Because Cimarron is an interstate carrier operating under an ICC certificate and authority, Amerisure's policy also contains a special ICC form endorsement that is designed to assure compliance with ICC regulations governing the use of leased

semitrailer tractor trucks in interstate commerce. The ICC regulations require, in part, that all ICC certified carriers maintain exclusive possession, control, and use of leased equipment and assume complete responsibility for the operation of the equipment during the duration of the lease. See 49 CFR 1057.12(c)(1). The ICC endorsement attached to Amerisure's policy provides, in pertinent part:

> This insurance is *primary* and the company shall not be liable for amounts in excess of $1,000,-000 for each accident.
>
> \* \* \*
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration's Bureau of Motor Carrier Safety (Bureau) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles[.] . . . *It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment,* within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. [Emphasis added.]

The federal courts have considered the effect of this ICC endorsement on the allocation of risk among multiple insurers. In *Empire Fire & Ma-*

*rine Ins Co v Guaranty National Ins Co,* 868 F2d 357, 361 (CA 10, 1989), the court noted three different approaches that have been taken by the courts: (1) the ICC endorsement makes the insurance policy to which it is attached primary as a matter of law over all other insurance policies that lack similar provisions; (2) the ICC endorsement negates limiting provisions in the policy to which it is attached, but it does not establish primary liability over other policies that are also primary by their own terms; and (3) the ICC endorsement applies only to situations in which a claim is being asserted by a shipper or a member of the public and does not apply when allocating liability among insurance carriers.

We decline to follow the third approach listed above. As the court explained in *American General Fire & Casualty Co v Truck Ins Exchange,* 660 F Supp 557, 566 (D Kan, 1987):

> The fact that public policy issues are not involved when an insurance company is suing the carrier's insurer does not give a court leave to ignore the actual terms of the policy. The Arizona Supreme Court addressed this flaw in *Transport Indemnity Co v Carolina Casualty Ins Co,* 133 Ariz 395, 403; 652 P2d 134 (1982):
>
> "Even if we were to hold that federal law does not alone determine the rights of the insurers, we cannot read out of the Transport policy a provision which is in that policy. The fact that federal law imputes that provision when the policy is certified does not allow us to conclude that it is written in special ink which appears for cases involving the public and disappears in cases involving other insurers. Here, the clause is physically attached to the policy and must be given effect."

We choose instead to adopt the second approach

listed for the reasons stated in *Empire Fire & Marine Ins Co, supra* at 363:

> Nothing in the language of [the ICC] endorsement purports to make the insurance policy to which it is attached primary over all other insurance policies. A straightforward reading of the language suggests only that it negates any clauses in the body of the policy to which it is attached that would have the effect of limiting that insurance carrier's liability. That is, it *deletes* limiting clauses in the policy to which it is attached, but it does not *create* new, additional obligations in the policy, nor does it purport to limit or delete clauses in *other* policies issued by other insurance companies that may also have contractually assumed primary liability for the risk involved.
>
> . . . The ICC endorsement cannot, however, nullify the effect of other policies that are also primary by their own terms. To hold otherwise would grant the insurers who issued those policies a windfall. We find no authority to suggest that the ICC intended to allow other insurance companies to escape their contractual obligations to provide additional primary coverage, for which they presumably collected premiums, merely because of the fortuity that another policy involved in the matter contains an ICC endorsement. [Emphasis in the original.]

The court in *Empire Fire & Marine Ins Co* noted that an excess coverage clause is a type of clause that is negated by the ICC endorsement:

> An "excess coverage" clause is a "condition" or "limitation" that could "relieve the company of liability." Thus, an excess coverage clause is the kind of limitation that the ICC endorsement is designed to render ineffective. Once the ICC endorsement removes the "excess coverage" clause, the policy is treated as affording primary coverage. [*Id.*]

Accordingly, to the extent Amerisure's policy can be read as affording only excess coverage, the ICC endorsement operates to negate this limitation, thereby rendering the policy as affording primary coverage. However, the endorsement has no effect on Zurich's policy, which, as noted previously, also affords primary coverage by its own terms.

We must now determine how liability should be allocated where, as here, both policies purport to afford primary coverage. In this regard, the policies are consistent. Amerisure's policy states:

> When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

Similarly, Zurich's policy states:

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> * * *
>
> (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Because both policies are consistent with regard to how liability is to be allocated in situations where, as here, there are two policies that provide primary coverage, liability may be allocated in

accordance with the policy language. See *St Paul Fire & Marine Ins Co v American Home Assurance Co,* 444 Mich 560, 570; 514 NW2d 113 (1994). Because the present record does not permit us to make this determination, we remand for this purpose.

The trial court's order is vacated, and the case is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.