*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN G S TAYLOR and NANCY TAYLOR,

        Plaintiffs-Appellants,

v

LAKE MICHIGAN INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
August 24, 2023

No. 360974
Antrim Circuit Court
LC No. 2020-009240-CK

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Plaintiffs, Steven and Nancy Taylor, appeal by right the trial court's order granting defendant Lake Michigan Insurance Company's motion for summary disposition and dismissing their case and the court's denial of their motion for reconsideration. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs purchased a property with a log home in Bellaire, Michigan during September 2015 for $408,000. They contacted defendant, an independent insurance agency with whom they previously did business, to assist them in securing homeowner's insurance. Plaintiffs told defendant's representative, Lisa Stanard, that they believed the property likely would hold a greater value in the future because they purchased it through a "distressed sale." Stanard obtained information from Steven regarding the nature of the house and input and processed that information to generate a rate comparison and replacement cost estimate which she then uploaded into Auto-Owners Insurance Company's (Auto-Owners) computer system. Auto-Owners is an insurer with whom defendant has an agency contract that permits defendant to bind insurance.

Auto-Owners' replacement cost estimator estimated the house replacement cost at $700,650. Auto-Owners, however, had the property inspected and amended that house replacement cost estimate to $709,734. Auto-Owners issued plaintiffs a homeowner's insurance policy which they accepted without objection. The declaration page stated in relevant part:

| PROPERTY AND LIABILITY COVERAGES | LIMITS |
|---|---|
| A  Dwelling | $701,000 |
| B  Other Structures | 70,100 |
| C  Personal Property | 490,700 |
| D  Additional Living Expense and Loss of Rents | 140,200 |
| E  Personal Liability (each occurrence) | 500,000 |
| F  Medical Payments (each person) | 5,000 |

The policy also contained an increased cost endorsement (ICE) that provided for payment to plaintiffs of an additional 25% ($175,250) if certain conditions were met.

On or about October 20, 2016, plaintiffs' house burned and they suffered a total loss. Plaintiffs submitted a claim to Auto-Owners and a proof of loss which stated that plaintiffs estimated among other things the building damage amount at $1,282,500 and acknowledged the policy limit of $876,250, consisting of $701,000 plus $175,250, the ICE amount.  Plaintiffs submitted three contractors' quotes estimating the cost of rebuilding around $1,162,415.  On July 12, 2017, Auto-Owners corresponded with plaintiffs regarding coverage for the dwelling and advised in relevant part as follows:

> To date we have issued a dwelling ACV payment under Coverage A in the amount of $458,728.90 (less $2,500 deductible).  The dwelling policy limit prior to applying ICE was $701,000.  With the application of ICE, the revised dwelling policy limit is $876,250 (25% increase).  The rebuild estimates exceed this revised limit, enclosed is a payment for the difference of the revised dwelling policy limit, $876,250 and the amount issued previously, $458,728.90.  Our final dwelling payment is in the amount of $417,521.10 ($2,500 deductible absorbed in the excess amount), which exhausts the limit on coverage A.

Auto-Owners' representatives communicated further with plaintiffs regarding their policy limits under the various coverages and ultimately Auto-Owners completed the adjusting of plaintiffs' claim as of August 2019.  Plaintiffs never rebuilt the house and sold the property.

Apparently, unsatisfied with Auto-Owners' settlement of their claim, plaintiffs sued defendant on December 7, 2020, essentially alleging that defendant owed them a duty to ensure the adequacy of their homeowner's insurance policy to enable them to rebuild their house.  After conducting discovery, defendant moved for summary disposition.  The trial court held a hearing and later issued a written opinion and order granting defendant's motion.  Plaintiffs moved for reconsideration and the trial court denied their motion.  Plaintiffs now appeal.

## II. STANDARD OF REVIEW

We review de novo motions for summary disposition brought under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). MCR 2.116(C)(10) permits a trial court to grant summary disposition where "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party must support its motion with affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). If the moving party properly supports its motion, the burden shifts to the opposing party to demonstrate with admissible evidence that a genuine issue of disputed material fact exists. *Id*. at 440-441. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews the record in the same manner as the trial court and "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). This Court also reviews de novo questions regarding the proper interpretation of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*.

## III. ANALYSIS

Plaintiffs essentially argue on appeal that the trial court erred by ruling that defendant did not owe them the duty to ensure the adequacy of the insurance coverage they obtained and erred by ruling that a special relationship did not exist requiring the imposition of such duty upon defendant. We disagree.

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "Whether a duty is owed is a question of law." *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App 359, 364; 663 NW2d 514 (2004) (citation omitted). There can be no liability if defendant owed plaintiffs no duty. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). "The causation element of a negligence claim encompasses both factual cause (cause in fact) and proximate, or legal, cause." *Powell-Murphy v Revitalizing Auto Comm Environmental*, 333 Mich App 234, 245; 964 NW2d 50 (2020) (citation omitted). To prove factual causation requires showing that "but for" the defendant's actions the plaintiffs' injury would not have occurred and cannot be based on speculation. *Id*. at 245-246. Proof of proximate cause requires a plaintiff to establish that a defendant bears legal responsibility for the consequences. *Id*. at 246.

An insurance policy constitutes a contractual agreement between the insurer and the insured. *Zurich American Ins Co v Amerisure Ins Co*, 215 Mich App 526, 530; 547 NW2d 52 (1996). Michigan law has long presumed that one who has signed a written contract knows the nature of the instrument and understands its contents. *McKinstry v Valley Ob-Gyn Clinic, PC*, 428

Mich 167, 184; 405 NW2d 88 (1987). "When an insurance policy 'is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer.' " *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008), quoting *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998). An insurance agent owes a duty to procure insurance coverage requested by an insured. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 37-38; 761 NW 2d 151 (2008). "The insured's agent must strictly follow the insured's instructions which are clear, explicit, absolute, and unqualified." *Id*. at 38. Michigan law requires an agent to procure the coverage actually ordered by the insured but does not require an agent to meet or exceed an insured's expectations. *Id*. "The rule of reasonable expectations clearly has no application to unambiguous contracts. That is, one's alleged 'reasonable expectations' cannot supersede the clear language of a contract." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003).

In *Harts v Farmers Ins Exchange*, 461 Mich 1; 597 NW2d 47 (1999), our Supreme Court clarified the legal relationships between an insurer, its agent, and the insureds and the duty an agent owes to the insured as follows:

> [U]nder the common law, [the insurer's agent] had a duty to comply with the various fiduciary obligations he owed to [the insurer] and to act for its benefit. Moreover, because he was [the insurer's] agent, he had no common-law duty to advise plaintiffs. This general common-law rule is no doubt premised, at least in part, on the nature of the relationship of the parties. Specifically, the relationship between the insurer and insured is a contractual one. The relationship between the insurer and its agent is controlled by the principles of agency. [*Id*. at 6-7 (citations omitted).]

> Sound policy reasons also support the general rule that insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage.

> \* \* \*

> Thus, under the common law, an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage. Such an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered. Our Legislature also recognizes the limited nature of the agent's role. Those who offer insurance products have been regulated by statute in Michigan for at least 120 years, with insurance agents and insurance counselors being in fact subject to licensure before they can offer their services to the public. The most recent revisions to these regulatory statutes became effective in 1973. What is clear from these provisions is that the Legislature has long distinguished between insurance agents and insurance counselors, with agents being essentially order takers while it is insurance counselors who function primarily as advisors. [*Id*. at 7-9 (citations omitted).]

However, as with most general rules, the general no-duty-to-advise rule, where the agent functions as simply an order taker for the insurance company, is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured. This alteration of the ordinary relationship between an agent and an insured has been described by our Court of Appeals as a "special relationship" that gives rise to a duty to advise on the part of the agent. While we agree . . . that there must be some type of interaction on a question of coverage, we do not subscribe to the possible reading of *Bruner* [*v League General Ins Co*, 164 Mich App 28; 416 NW2d 318 (1987),] that holds reliance on the length of the relationship between the agent and the insured is the dispositive factor in transforming the relationship into one in which the traditional common-law "no duty" principle is abrogated. We thus modify the "special relationship" test discussed in *Bruner* . . . so that the general rule of no duty changes when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 9-11 (citations omitted).]

In this case, defendant is an independent insurance agency that serves as an agent of several insurance carriers and assists its clients in procuring insurance from those carriers. As such, defendant owed plaintiffs a duty to strictly follow their instructions. The record reflects that plaintiffs gave defendant a clear, explicit, absolute, and unqualified directive to assist them in obtaining a replacement cost homeowners policy for their Bellaire property, similar to the insurance policy that they had covering their previous home located in Grand Rapids. Stanard testified that not all carriers would insure log homes but Auto-Owners did. Evidence established that defendant followed the standard practice of inputting information obtained from Steven regarding the Bellaire house into a computer that processed the information to derive rate comparisons and a replacement cost estimate. Auto-Owners required defendant to submit the replacement cost estimator information with the application containing information regarding the home. Auto-Owners required defendant do so before defendant could bind insurance.

The record reflects that Stanard uploaded onto Auto-Owners' computer system the information and Auto-Owners' system generated its own replacement cost estimate for the various coverages for plaintiffs' policy. Auto-Owners independently analyzed the data and derived from it the proposed policy limits for the various coverages for plaintiffs' Bellaire house and its contents. Auto-Owners sent a third-party inspector to plaintiffs' Bellaire property to inspect and present Auto-Owners with the inspection report from which Auto-Owners adjusted upward the estimated house replacement cost. Auto-Owners, and not Stanard or defendant, determined the replacement cost for plaintiffs' Bellaire house and set the policy limits for the various coverages.

The record indicates that Stanard sent to Steven via e-mail the Auto-Owners' quote and plaintiffs ultimately signed without question or objection an application for insurance with dwelling coverage of $701,000. Defendant did not have a role in having the inspection performed, setting the replacement cost, or writing the Auto-Owners homeowners policy. Further, the record indicates that defendant did not assess the adequacy of replacement cost estimates and relied on Auto-Owners' software to determine the dwelling replacement cost of $701,000. Significantly,

-5-

the record is devoid of any specific request by plaintiffs for defendant to assess the adequacy of the coverages or to intervene with Auto-Owners to change the policy limits. No evidence establishes that anyone affiliated with defendant agreed or promised plaintiffs to assess the adequacy of the policy limits set by and offered by Auto-Owners. The record indicates that Steven accepted without objection the policy limits set by Auto-Owners. Further, no evidence indicates that Stanard misrepresented to plaintiffs any aspect of the coverages defined by and offered by Auto-Owners. Accordingly, the general rule expressed in *Harts* applied. Defendant had no duty to assess the adequacy of the coverage or advise plaintiffs of their policy's adequacy regarding the replacement cost coverage for the dwelling.

Plaintiffs argue that the existence of a special relationship existed between them and defendant such that the trial court erred by not ruling that an exception to the general rule required the imposition of a duty upon defendant. The record, however, establishes that they failed to present evidence that demonstrated the existence of any of the exceptions to the general rule. No evidence established that defendant misrepresented the nature or extent of the coverage offered or provided by Auto-Owners. No evidence established that plaintiffs made an ambiguous request or one that required clarification. No evidence established that plaintiffs made an inquiry to defendant that required advice. No evidence established that defendant inputted inaccurate information into the system or provided plaintiffs inaccurate advice of any sort. Further, no evidence in the record indicates that defendant assumed an additional duty at any time by either express agreement or promise to plaintiffs. The record evidence contradicts every ground plaintiffs argue created a special relationship and the length of plaintiffs' and defendant's business relationship is not dispositive. Under the facts of this case, the law does not impose upon defendant the duty to ensure the adequacy of plaintiffs' policy. The record reveals that Steven knew the terms of the policy before accepting Auto-Owners' offer. He also knew the policy limits when he made a claim after the fire.

The trial court properly determined that no genuine issue of material fact precluded granting summary disposition for defendant. The trial court correctly determined that defendant did not owe plaintiffs a duty to assess and ensure the adequacy of the homeowner's insurance coverage that plaintiffs obtained from Auto-Owners and plaintiffs failed to establish a special relationship that gave rise to a duty to do so. De novo review of the record establishes that the trial court correctly applied the applicable law to the facts of this case. Accordingly, the trial court did not err by granting defendant summary disposition. The trial court did not abuse its discretion by denying plaintiffs' motion for reconsideration.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford