*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOY KLINE, Personal Representative of the Estate of
Jeffrey Lyle Kline, Deceased,
　　　　　*Plaintiff/Counter-Defendant-Appellant,*

　　　*v.*

GULF INSURANCE COMPANY,
　　　　　*Defendant/Counter-Plaintiff
　　　　　and Third-Party Plaintiff-Appellee,*

CECIL HAMLIN,
　　　　　*Third-Party Defendant-Appellee.*

No. 05-2320

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00213—Richard A. Enslen, District Judge.

Argued: September 12, 2006

Decided and Filed: October 18, 2006

Before: ROGERS and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** David M. Dark, JAMES, DARK & BRILL, Kalamazoo, Michigan, for Appellant.
James R. Case, KERR, RUSSELL AND WEBER, Detroit, Michigan, for Appellees. **ON BRIEF:**
David M. Dark, JAMES, DARK & BRILL, Kalamazoo, Michigan, for Appellant. James R. Case,
Joanne Geha Swanson, KERR, RUSSELL AND WEBER, Detroit, Michigan, for Appellees.

---

**OPINION**

---

　　　ROGERS, Circuit Judge. This case involves the legal question of whether a federally-
prescribed form endorsement attached to a trucking company's insurance contract modifies the
attachment point of an umbrella policy when the endorsement was not legally required in the first

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

place. The trucking company in this case purchased liability insurance beyond what was required under federal regulations and allegedly attached to the policy an endorsement in the nature of a form prescribed by the United States Department of Transportation for the purpose, not applicable in this case, of meeting those federal requirements. The content of the filled-out form is ambiguous in the context of the umbrella policy to which it was allegedly attached, and the form is best interpreted in light of the policies for which it was created. So interpreted, the form did not require that the defendant insurance company pay more than what was required under the original umbrella insurance contract. We therefore affirm the judgment of the district court, which held that the insurance company defendant was not liable beyond the terms of its original insurance contract.

On November 3, 1997, Joy Kline's husband, Jeffrey Lyle Kline, died as a result of injuries that he sustained in a collision with a truck owned by Builders Transport Inc., an interstate trucking business. *See Kline v. Gulf Ins. Co.*, 98 F. App'x 471 (6th Cir. 2004). To ensure that members of the public receive compensation for highway accidents such as the one involving Jeffrey Kline, the Motor Carrier Act of 1980 requires interstate trucking companies to maintain a minimum level of insurance coverage, Pub. L. No. 96-296, 94 Stat. 793 (1980); *Harco Nat'l Ins. Co. v. Bobac Trucking Inc.*, 107 F.3d 733, 736 (9th Cir. 1997), but allows companies to self-insure in certain circumstances. 49 U.S.C. § 13906(d); 49 C.F.R. § 387.309. In this case, Builders Transport self-insured up to the federally-required minimum of $1 million. It also obtained an excess insurance policy from Reliance Insurance Company for claims over $1 million up to $3 million, and an umbrella policy from Gulf Insurance Company for liability over $3 million. The Reliance policy included a $1 million annual "loss corridor" deductible, such that Builders Transport would need to pay the first $1 million of all excess claims against Reliance during a particular year.

Joy Kline obtained a $3.2 million judgment against Builders Transport. Were it solvent, Builders Transport would have had to pay Kline $2 million, including the $1 million that it self-insured and the $1 million "loss corridor" deductible under the Reliance policy, there being no prior claims against Reliance under the excess policy for that year. Reliance would then have had to pay $1 million and Gulf would have had to pay the remaining $200,000. However, because Builders Transport filed for bankruptcy in May 1998, Kline only received $1 million from Reliance and $200,000 from Gulf. She recovered nothing from Builders Transport.

This appeal arises because Gulf, for reasons unclear to this court, may have attached to its insurance policy an "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1990." The endorsement form, called an MCS-90, purports to amend Gulf's original insurance policy and require Gulf to pay injured members of the public up to the minimum that federal law required.[1] As mentioned above, Builders Transport self-insured up to the minimum coverage, and Gulf did not need to make such a promise. Gulf concedes that, if it did attach the MCS-90, doing so was a mistake.[2]

Kline sued Gulf, arguing among other things that Gulf attached the MCS-90 and that the MCS-90 increased Gulf's liability by amending its Builders Transport insurance policy. The district court initially held that no rational juror could find that Gulf attached an MCS-90 endorsement and dismissed Kline's claim. *See Kline*, 98 F. App'x at 474-75. This court, however, reversed that

---

[1]Under Gulf's original insurance policy, Builders Transport's bankruptcy did not increase Gulf's liability.

[2]Gulf argues that, as a factual matter, it did not attach the MCS-90. For purposes of resolving Gulf's motion for summary judgment, we will resolve this disputed fact in favor of Kline, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

determination in our prior opinion on the ground that there was at least a genuine issue of fact in that regard. *See id.*[3]

On remand, the district court declined to hold a trial to determine whether Gulf in fact attached an MCS-90 endorsement to its policy. *See Kline v. Gulf Ins. Co.*, No. 1:01-cv-213, 2005 U.S. Dist. LEXIS 30809, at *13-16 (W.D. Mich. Sept. 12, 2005). Instead, the district court held that an MCS-90 form, even if attached, did not require Gulf to pay Kline any more than the $200,000 that Gulf had already paid. *See id.* First, the district court reasoned that an MCS-90 form in this case at most required Gulf to act as a surety for Builders Transport's self-insurance scheme. *See id.* at *10-13. Moreover, a surety's MCS-90-based obligation to pay is triggered only when the principal (here Builders Transport) denies coverage. *See id.* at *13. Because Builders Transport "made no effort to deny coverage," Gulf's obligation to act as a surety was not triggered. *Id.* at *14. Second, the district court reasoned that the public policy goals behind the MCS-90 form did not require Gulf to pay the second $1 million of liability. *See id.* at *14-15. While acknowledging that the MCS-90 form may negate limiting clauses in a policy that calls for denial of coverage to an injured member of the public, the district court nevertheless held that an MCS-90 form's "public policy is not implicated when coverage is provided but not paid by a primary insurer." *Id.* at *15-16.[4]

We affirm, although our reasoning is not entirely the same as that of the district court.[5]

The language at issue in this case is not clear because the MCS-90 is a form ill-suited for the parties to express a clear intention regarding how the issue in this case is to be resolved. The MCS-90 is a form that the Department of Transportation developed and the Office of Management and Budget approved. Gulf filled out the relevant section of the form as follows:

> The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "X" for the limits shown:
>
> ____     This insurance is primary and the company shall not be liable for amounts in excess of $_____ for each accident.

---

[3] In its opinion, this court refrained from adopting Gulf's argument that an MCS-90 form could not amend the umbrella policy merely because the form in this case was "not filed with the Department of Transportation." *Kline*, 98 F. App'x at 475. The court held that no authority supported the position that the failure of a party to "submit endorsements to the government vitiates any coverage so provided." *Id.* In addition, this court rejected as unsupported by case law Gulf's argument that the "MCS-90 endorsement is not triggered because both [Gulf] and Reliance provided some, albeit inadequate, coverage." *Id.* at 476. As to the issue of first impression involved in this appeal, this court held that "the effect of the attachment of an MCS-90 endorsement to an umbrella policy is a difficult issue [that] we decline to reach where the district court has not ruled on the issue." *Id.*

[4] The district court dismissed Kline's related claims because the MCS-90 endorsement did not have an impact on Gulf's status as an umbrella insurer. *Kline*, 2005 U.S. Dist. LEXIS 30809, at *15-16.

[5] It is not necessary for us to resolve whether federal or state law controls the issue presented in this case, as we have been presented no basis for distinguishing between federal and Michigan law as to how the legal issue in this case should be resolved. Several courts have held that an MCS-90 is to be interpreted under federal law. *Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 470 (5th Cir. 2005); *Carter v. Vangilder*, 803 F.2d 189, 191 (5th Cir. 1986); *Caroline Cas. Ins. Co. v. Ins. Co. of N. Am.*, 595 F.2d 128, 135-39 (3d Cir. 1979). The need to interpret the MCS-90 under federal law is, however, less apparent where, as in this case, the parties incorporated the language from the federal form into a private contract for reasons other than compliance with federal regulations. *See Carter*, 803 F.2d at 191 (endorsement governed by federal law because the endorsement was required by the Motor Carrier Act).

> X        This insurance is excess and the company shall not be liable for amounts in excess of $ <u>1,000,000</u> for each accident in excess of the underlying limit of $ <u>1,000,000</u> for each accident.

The form also contained the following language:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured *within the limits stated herein*. . . .

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the *limits of liability described herein* any final judgment recovered against the insured for public liability. . . .

(Emphasis added.)

At first glance, it appears from the terms of the MCS-90 that Gulf must pay up to $1 million for "each accident in excess of the underlying limit of $1,000,000 for each accident" because Gulf wrote "$1,000,000" instead of "$3,000,000" into the form. *See* 62 Fed. Reg. 16370, 16403 (Apr. 4, 1997) (describing how a company in Gulf's position might have completed the MCS-90). In this case, Kline received a judgment for $3.2 million but only recovered $1 million from Reliance. The terms of the MCS-90 can be read to provide that Kline should receive $1 million from Gulf, not $200,000. Kline's appeal hinges on this construction of the MSC-90.

The language of MCS-90 as a whole, interpreted in light of the surrounding circumstances, however, leads to the conclusion that Gulf did not change its coverage when filling out the government-prepared form. Two aspects of the very language upon which Kline relies caution against Kline's interpretation. First, the check-marked part of the form—upon which Kline's brief places primary reliance—is by its terms a limit on Gulf's obligation rather than an expansion of Gulf's obligation. *Cf. Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006) (holding that interpreting a negative statement as a positive one "goes beyond interpretation and actually modifies the words of the statute"). It is only the affirmative, obligation-creating language of the MCS-90 ("within the limits stated herein" and "limits of liability described herein") that plausibly obligates Gulf beyond the terms of the original excess policy. That language is dealt with below.

Second, the phrase "underlying limit of $1,000,000" is ambiguous in light of the complex insurance scheme that Builders Transport, Reliance, and Gulf created. As discussed above, Gulf provided an umbrella policy to cover liability above Reliance's policy, which, in turn, covered liability above Builders Transport's self-insurance. The reference to "the underlying limit of $1,000,000," therefore, could have referred to any accident resulting in liability over $1 million (as Kline argues) or any accident that resulted in liability exceeding Reliance's "underlying limit of $1,000,000." Under the latter reading, Gulf would not be liable because, as we previously held, Reliance's policy attached at $2 million and "excess of the underlying limit" would be the $200,000 in liability above $3 million. *Kline*, 98 F. App'x at 473. The broader context creates uncertainty as to the form's meaning.

The ambiguity arises in large part because the MCS-90 form does not really permit Gulf to reflect the limits contained in the original excess insurance contract. As discussed above, Builders Transport's policy with Reliance included an annual "loss corridor" deductible. For this reason, Reliance's attachment point could have varied from $2,000,000 (if Builders Transport paid the deductible) to $1,000,000 (if Builders Transport had exhausted its annual deductible earlier that year on other claims). Because Reliance's attachment point was a moving target and Gulf's attachment

point depended on Reliance's attachment point, there was no single value that Gulf could have entered into the blanks of the MCS-90 to reflect accurately Gulf's attachment point. Were Gulf the drafter of the MSC-90 language, we would construe the language against it. *See Old Life Ins. Co. of Am. v. Garcia,* 411 F.3d 605, 613 (6th Cir. 2005) (applying Michigan law). However, because Gulf did not author the form, we will not, in light of the other evidence, construe the MSC-90 against Gulf in this context. *See Midwest Triangle Paint Works, Inc. v. Firemen's Ins. Co.*, 183 N.E.2d 562, 564 (Ill. App. Ct. 1962); *Goldman v. Piedmont Fire Ins. Co.*, 198 F.2d 712, 715 (3d Cir. 1952).

The only language that can be read on its face to provide the additional coverage that Kline claims is ambiguous. Both the "within the limits stated herein" and "limits of liability described herein" language could refer to the MCS-90, which, Kline argues, changed the limits of liability. On the other hand, the "herein" language could also refer to the original policy to which Gulf attached the MCS-90. If the latter, the MCS-90 did not adjust the terms contained in the original policy.

Read as a whole, the MCS-90 incorporated the limits of liability in the original insurance policy; it did not replace them. Language surrounding the "herein" clause suggests that the form did not change Gulf's liability. The form provides, "The insurance policy to which this endorsement is attached . . . is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property within Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC)." The disputed language, when read in light of this purpose, suggests that Gulf intended to offer $1 million in coverage only if the law required such coverage. Indeed, the purpose of the MCS-90 is to verify to the federal government and the public that a given motor carrier meets minimum security requirements. *See* 65 Fed. Reg. 25020, 25021 (Apr. 28, 2000). In this case, Builders Transport self-insured to the minimum regulatory amount, and the federal regulations did not require coverage. However, had additional coverage been necessary (e.g., had Builders Transport stopped self-insuring), the MCS-90 would have required Gulf to increase its coverage. Thus, language regarding the purpose of the MCS-90 suggests that Gulf is not liable in this case because Builders Transport did not fail to insure up to the minimum.

Moreover, public policy considerations do not warrant additional compensation, as Kline already received $200,000 more than the minimum federal requirement. The "purpose of the [MCS-90] endorsement is to give full security for the protection of the public *up to the limits prescribed*." 46 Fed. Reg. 30974 (emphasis added). In this case, Kline's recovery exceeded the $1 million limit prescribed, a fact that every court to have considered the scope of MCS-90 forms found important.[6] In *Wells v. Gulf Insurance Co.* and in *McGirt v. Royal Insurance Co. of America*, the district courts for the Eastern District of Texas and the District of Maryland, respectively, distinguished the facts of this case from the facts before them. 2006 WL 887402 (E.D. Tex. March 28, 2006); 399 F. Supp. 2d 655 (D. Md. 2005). In both cases, the victims' families received no compensation, and both courts held that the public policy required the insurance company to provide some compensation. *See also Kline,* 2005 U.S. Dist. LEXIS 30809 (noting how public policy did not apply). Because Kline received $1.2 million, the public policy implications in *Wells* and *McGirt* are not before us.

---

[6] Kline's reliance on *Lynch v. Yob*, 768 N.E.2d 1158 (Ohio 2002), is misplaced because the Ohio Supreme Court in *Lynch* never held that an MCS-90 form promising coverage above the federally-required minimum mandated that an insurance company pay above that limit. In *Lynch*, the MCS-90 endorsement guaranteed $2.5 million of primary coverage for injured members of the public. 768 N.E.2d at 1165. The court, however, never stated the minimum coverage that federal law required. If the minimum were $5 million, the $2.5 million that the victim received would have been below the federally-required minimum.

Finally, it is worth noting that interpreting the MCS-90 as Kline suggests raises other public policy concerns. The federal government balanced the need to compensate victims with the needs of industry and determined the appropriate minimum compensation for members of the public. In essence, Kline is asking us to rewrite the minimum compensation provisions, something we are unwilling to do given the language of the MCS-90 and the public policy directives already in place. In addition, Kline's interpretation of the MCS-90 would force insurance companies to evaluate the insured's financial well-being before issuing secondary policies. Doing so generates additional costs. *See Cont'l Marble & Granite Co., Inc. v. Canal Ins. Co.*, 785 F.2d 1258, 1259 (5th Cir. 1986).

As all of Kline's claims are dependent on her interpretation of the MCS-90, the district court properly dismissed those claims. The judgment below is AFFIRMED.