**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 05-2384**

—————————

JOE LEE MCGIRT; DAT TAN LE,

Plaintiffs - Appellees,

versus

GULF INSURANCE COMPANY,

Defendant - Appellant,

and

ROYAL INSURANCE COMPANY OF AMERICA,

Defendant.

—————————

**05-2419**

—————————

DAT TAN LE,

Plaintiff - Appellant,

and

JOE LEE MCGIRT,

Plaintiff,

versus

GULF INSURANCE COMPANY; ROYAL INSURANCE
COMPANY OF AMERICA,

                                      Defendants - Appellees.

                    ————————————

                    **No. 05-2420**

                    ————————————

JOE LEE MCGIRT,

                                      Plaintiff - Appellant,

     and

DAT TAN LE,

                                      Plaintiff,

     versus

GULF INSURANCE COMPANY; ROYAL INSURANCE
COMPANY OF AMERICA,

                                      Defendants - Appellees.

                    ————————————

Appeals from the United States District Court for the District of
Maryland, at Greenbelt. Roger W. Titus, District Judge. (CA-02-
3455)

                    ————————————

Argued: October 26, 2006          Decided: November 30, 2006

                    ————————————

Before WILKINS, Chief Judge, and WIDENER and MOTZ, Circuit Judges.

                    ————————————

Affirmed in part and reversed in part by unpublished per curiam
opinion.

                    ————————————

**ARGUED:** Robert Lawrence Ferguson, Jr., FERGUSON, SCHETELICH & BALLEW, P.A., Baltimore, Maryland; William Carlos Parler, Jr., PARLER & WOBBER, Towson, Maryland, for Appellant/Cross-Appellees. Salvatore Joseph Zambri, REGAN, HALPERIN & LONG, P.L.L.C., Washington, D.C.; Patrick Giles Cullen, ROLLINS, SMALKIN, RICHARDS & MACKIE, Baltimore, Maryland, for Appellees/Cross-Appellants. **ON BRIEF:** Shannon E. Peters, FERGUSON, SCHETELICH & BALLEW, P.A., Baltimore, Maryland, for Appellant/Cross-Appellee Gulf Insurance Company.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

The injured driver of a passenger car, Dat Tan Le, and the driver of the tractor trailer that injured him, Joe Lee McGirt brought this declaratory judgment action. They sought a declaration that, upon the insolvency of the self-insured owner of the tractor trailer and its primary supplemental insurer, the owner's two excess insurers must pay any judgment in favor of Le in an underlying tort suit from the first dollar of the judgment. Le and McGirt also ask that the excess insurers defend McGirt in the underlying tort suit and pay his attorneys' fees here. They argue that both the language of the excess insurance policies and the MCS-90 endorsement attached to one of those policies require this coverage.

On cross-motions for summary judgment, the district court held that the language of the underlying policies did not require drop-down coverage, defense of McGirt in a tort suit, or payment of his attorneys' fees. McGirt v. Royal Ins. Co. of Am., 399 F. Supp. 2d 655, 669 (D. Md. 2005). However, the district court also held that the MCS-90 endorsement attached to one excess policy required that excess insurer to pay the first $1 million of any judgment in favor of Le. Id. at 667. The parties cross-appeal. After having had the benefit of oral argument and briefing from the parties, and after carefully reviewing the legal authorities and record, we conclude that the district court did not err in any respect as to

its decision on the attachment point of the underlying insurance policies, the insurers' duty to defend McGirt, or the payment of McGirt's attorneys' fees. As to these issues, we affirm on the basis of the district court's well-reasoned opinion. We reverse, however, with respect the effect of the MCS-90.

## I.

On or about March 24, 1997, a passenger car driven by Keith Blocker hit Le while he was driving in Prince George's County, Maryland, immobilizing Le's car on the highway. A tractor trailer owned by Builders Transport and driven by McGirt then hit Le from behind. The collision killed a passenger in Le's vehicle and severely injured Le. On or about January 15, 1999, Le sued McGirt, Builders, Family Dollar Trucking (the owner of the trailer being hauled by McGirt), and Blocker.

This case concerns Builders' insurance status. Federal law mandates evidence of financial responsibility for motor carriers engaged in interstate commerce. 49 U.S.C.A. § 31139(f) (2006). At the time of the accident, Builders satisfied these federal regulatory requirements through approval by the Interstate Commerce Commission (ICC) and Department of Transportation (DOT) as a qualified self-insurer for the regulatory minimum of $1 million of coverage. In addition, Builders carried supplemental primary insurance with Reliance National Indemnity Company for $1 million

of coverage above the $1 million self-insurance, subject to a $1.65 million annual deductible. Builders also purchased excess coverage from Gulf Insurance Company for $13 million, and further excess coverage of $10 million above the Gulf policy from Royal Insurance Company of America.

The parties agree that all of these policies were in effect at the time of the accident. Thus, if Builders and its various insurers had all remained solvent, a party like Le seeking to recover a judgment from Builders would be paid in the following order: (1) $1 million from Builders, through its self-insurance; (2) $1.65 million, also from Builders, as its deductible under the Reliance policy; (3) $1 million from Reliance; (4) $13 million from Gulf; (5) $10 million from Royal.

This case arises because both Builders and Reliance have become insolvent, and so unable to pay any judgment obtained by Le.[1] Because these primary insurers -- responsible for the first $3.65 million of coverage -- cannot pay, Le and McGirt argue that Gulf and Royal are required to drop down and pay first dollar coverage for Le's injuries. That is, even though Gulf and Royal would not have had to pay any part of a judgment for Le until an award exceeded $3.65 million if Builders and Reliance remained solvent, Le and McGirt contend that, given the insolvency of

---

[1]In May 1998, Builders filed for Chapter 11 Bankruptcy, and in October 2001, Reliance declared itself insolvent and liquidated its assets.

Builders and Reliance, Gulf and Royal must pay the judgment from its first dollar.

Le and McGirt base their intentions on the language of the Gulf and Royal policies and the MCS-90 endorsement attached to Gulf's policy.  As noted above, we believe the district court properly rejected the arguments based on the main body of the Gulf and Royal policies.  Accordingly, we turn to the effect of the MCS-90 endorsement attached to the Gulf policy.

## II.

The district court found, and Gulf now concedes, that a one-page form -- the federally prescribed MCS-90 endorsement -- was attached to and thus a part of Gulf's policy with Builders.  Noting the provision in federal law for an MCS-90 in certain circumstances, the district court accepted Le and McGirt's argument that this public policy purpose requires Gulf to provide the first $1 million of coverage when, as here, there is no other protection available for an injured member of the public.

Sections 29 and 30 of the Motor Carrier Act of 1980 mandate that motor carriers hauling general commodities in interstate commerce, like Builders, demonstrate proof of financial responsibility in one of four ways: (1) insurance; (2) a guarantee; (3) a surety bond; or (4) qualification as a self-insurer.  49 U.S.C.A. § 31139(f) (2006).  Federal regulations provide that if a

registrant opts to pursue the first option and demonstrate its financial responsibility through proof of insurance, the insurer must maintain a "Form MCS-90 Endorsement" as part of the policy. 49 C.F.R. § 387.15 (2006). In these circumstances, the parties must also file a separate certification of excess financial security (Form BMC-91 or BMC-91X) with the regulators to create a public record of the insurance. 49 C.F.R. § 387.313 (2006).

Certainly the district court was correct in recognizing the public purpose served by an MCS-90 endorsement when a motor carrier uses it to satisfy the obligations of the Motor Carrier Act of 1980. As the Department of Transportation explained in promulgating the rule creating the MCS-90, "[t]he purpose of the financial responsibility provisions of the Motor Carrier Act of 1980 is . . . to assure the general public that a motor carrier maintains an adequate level of financial responsibility sufficient to satisfy claims covering public liability." Minimum Levels of Financial Responsibility for Motor Carriers, 46 Fed. Reg. 30,974 (June 11, 1981).

In the case at hand, however, Builders satisfied the requirements of the Motor Carrier Act of 1980 through its certification as a qualified self-insurer, not through the MCS-90 attached to the Gulf policy. As a result, Gulf was not legally required to include an MCS-90 endorsement with Builders' policy, nor to file a BMC-91 or BMC-91X with the federal government.

-8-

Federal law recognizes the risks inherent in satisfying the 1980 Act's financial responsibility requirements through self-insurance: "When 'self-insurance' is involved, there is no security for the protection of the public other than the self-insured's financial strength . . . ." 46 Fed. Reg. 30974 (June 11, 1981). In sum, the federal regulatory scheme contemplates that there may be situations in which a member of the public will not be able to recover from a self-insured motor carrier.

Thus, the general public purpose of the MCS-90 endorsement -- although important in interpreting the endorsement when it is used to satisfy the Motor Carrier Act of 1980 -- does not resolve the dispute here when the endorsement is not legally required. Instead, we must look to the language of the MCS-90 endorsement attached to the Gulf policy to determine the endorsement's effect on Gulf's contractual obligations.

III.

The single-page MCS-90 form endorsement allows the parties to mark a box indicating whether the underlying policy to which the MCS-90 is "attached provides primary or excess insurance . . . for the limits shown." On the MCS-90 attached to the Gulf policy, the parties marked an "X" before the "excess" statement, and filled in limits of $1 million as shown:

[ ] This insurance is primary and the company shall not be liable for amounts in excess of $_____ for each accident.

[X] This insurance is excess and the company shall not be liable for amounts in excess of $1,000,000 for each accident in excess of the underlying limit of $1,000,000 for each accident.


The form next includes a series of definitions, including that "Public Liability means liability for bodily injury, property damage, and environmental restoration." The form then recites the contents of the endorsement:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment,

-10-

> within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

Le and McGirt, citing the policy language providing that the insurer agrees to pay "any final judgment recovered against the insured for public liability," argue that the MCS-90 requires Gulf to drop down and pay any judgment for the public liability of Builders in this case, i.e. the first million dollars. But the key language -- "within the limits of liability described herein" -- comes immediately before this requirement. As an excess policy, the Gulf policy ordinarily would not attach until there has been a judgment of $3.65 million, so that the "limits" of the Gulf policy are between $3.65 million and $16.65 million. Thus, it would seem that the first $3.65 million of any potential judgment recovered against Builders for its public liability is not "within the limits of liability described."

Even so, Le and McGirt argue that the language "no condition, provision, stipulation, or limitation . . . shall relieve the company from liability or from the payment of any judgment" means that the major "limit of liability" of the Gulf policy -- that it

-11-

is an excess, not a primary policy -- should be "read out" of the policy, and not apply. But the policy expressly repeats the phrase "within the limits of liability herein described" in this sentence of the endorsement, indicating that the ceiling <u>and</u> floor of the "limits of liability" remain intact.

The district court nevertheless found the MCS-90 endorsement ambiguous. Although neither the court nor Le and McGirt expressly so state, seemingly the only possible source of ambiguity revolves around the word "herein." Conceivably, "herein" could refer to the limits written on the MCS-90 itself next to the box checked on the top of the form, rather than the limits of the policy to which the form is attached. However, all three times that the term "herein" is used in the MCS-90, the "policy" itself is also referenced earlier in the sentence. Further, the MCS-90 limits are described on the top of the form, above all three of these references, so the use of the word "herein" instead of the word "above" in the MCS-90 indicates the reference is to the underlying attached policy. Moreover, the MCS-90 states that the underlying policy to which it is attached "is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property within Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC)." This language further indicates that the MCS-90 only changes the limits of the body of

the policy _if_ required to do so to comply with federal law. Because Builders self-insured for the minimum regulatory amount, this purpose is not triggered here.

Nor do we find persuasive Le and McGirt's contention that interpreting the MCS-90 in this manner robs it of all meaning. What the _excess_ MCS-90 does is negate an insurer's ability to rely upon policy conditions -- such as notice requirements or restrictions to vehicles or incidents covered -- to disclaim coverage. It does not alter the point at which an insurer's liability is triggered. In sum, the MCS-90 does not change the attachment point of Gulf's obligations -- a judgment of $3.65 million.

We note that the only other circuit to consider the meaning of the MCS-90 in this context -- in a case involving the same insurer and insured -- has reached the same conclusion as to its effect on the policy limits.[2] The Sixth Circuit, in _Kline v. Gulf_, 2006 U.S. App. LEXIS 25755 (6th Cir. Oct. 18, 2006), held that the MCS-90 attached to Gulf's excess insurance policy with Builders "did not change Gulf's liability." _Id._ at *12. As we do now, the Sixth Circuit concluded that the "herein" language surrounding "limits of liability" in the MCS-90 "incorporated the limits of liability in

---

[2]The panoply of appellate cases upon which Le and McGirt rely involve primary insurance policies, or excess policies with no MCS-90 endorsement, or MCS-90 endorsements necessary to satisfy federal requirements, or disputes between insurers involving multiple MCS-90 endorsements. Accordingly, these cases are inapposite here.

the original insurance policy; it did not replace them." Id. Of course, in Kline, Reliance had not yet become insolvent, so the injured member of the public could recover part of her judgment from Reliance. Although the Sixth Circuit noted that fact as an additional basis for its conclusion, it initially held that "the language of the MCS-90 as a whole . . . leads to the conclusion that Gulf did not change its coverage when filling out the government-prepared form," i.e. the MCS-90. Id. at *9.

We recognize that this decision leads to an unfortunate outcome for the injured member of the public. But given that federal law seeks to protect the public by guaranteeing some proof of financial responsibility by motor carriers, not by mandating a minimum payment to the injured, we are bound by the terms of the contract between Builders and its insurers.


IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART AND REVERSED IN PART.