REVISED April 23, 2007

United States Court of Appeals
Fifth Circuit
**F I L E D**

**April 04, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.  06-40911
_____

JASON WELLS,

Plaintiff-Appellee,

versus

GULF INSURANCE CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

The issue here is whether an endorsement—the form of which is prescribed by the

Motor Carrier Act's implementing regulations—requires an excess insurer to drop below its

liability floor and pay a judgment when it is the first solvent insurer.  The district court

1

thought so.  We disagree and reverse.

I.

The Motor Carrier Act of 1980 (the "Act") and its implementing regulations require carriers like Defendant-Appellant Builder's Transport, Inc. ("BTI") to demonstrate that they are in some way insured against damage they cause.[1]  A carrier can fulfill its responsibility by 1) a form MCS-90 endorsement attached to a contract of insurance, 2) a surety bond, or 3) self-insurance.[2]  BTI satisfied the Act through self-insurance up to $1 million.[3]  BTI then entered into excess insurance contracts with Reliance Insurance Company ("Reliance"), Gulf Insurance Company ("Gulf"), Royal Indemnity Company ("Royal"), and Federal Insurance Company ("Federal").  Under self-insurance and its excess insurance contracts, BTI was insured as follows:

$0 – $1 million — BTI (self-insured)

> $1 million – $3.782 million — Reliance (subject to $1.782 million annual
                                                      deductible)

> $3.782 million – $16.782 million — Gulf

> $16.782 million – $26.782 million — Royal

> $26.782 million – $36.782 million — Federal

Jason Wells was injured in an accident involving a truck that BTI operated.  Wells

---

[1]  49 U.S.C. § 13906(a)(1); 49 C.F.R. § 387.7(a).

[2]  49 C.F.R. § 387.7(d).

[3]  §§ 387.7(d)(3) and 387.9.

2

sued BTI and obtained a $417,771 judgment, but BTI's bankruptcy thwarted execution. Wells then tried to collect the judgment from Reliance, but a Pennsylvania commonwealth court declared Reliance insolvent. Finally, Wells sued Gulf. Gulf's excess insurance contract with BTI contained the MCS-90 endorsement, which the regulations prescribe when an insurance contract is a carrier's method for satisfying the $1 million minimum financial responsibility requirement,[4] but which was unnecessary because of Wells' self-insurance.[5] Wells' theory of liability was that the endorsement's language placed Gulf in the position of a surety because it was the first solvent insurer, and therefore it was liable from dollar one of the judgment.

The MCS-90 form endorsement follows:[6]

> The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "X", for the limits shown:
>
> 9 This insurance is primary and the company shall not be liable for amounts in excess of $ _____ for each accident.
>
> 9 This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $ _____ for each accident.
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with

---

[4] § 387.7(d)(1).

[5] § 387.7(d)(3). However, as discussed below, the form contemplates that it will in some circumstances be used in excess insurance contracts.

[6] § 387.15 (emphasis added).

sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration.

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. *It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.* However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. *The insured agrees to reimburse the company for any payment made by the company* on account of any accident, claim, or suit involving a breach of the terms of the policy, and *for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.*

Wells argued in his motion for summary judgment that the endorsement meant that Gulf was obligated to pay the judgment because it was the first solvent insurer of any kind, primary or excess. The district court agreed and entered summary judgment for Wells.

## II.

We review the district court's summary judgment and its interpretation of the

4

endorsement de novo. *Schneider Nat'l Transp. v. Ford Motor Co.*[7]

The district court relied primarily on public policy considerations in holding that the endorsement's language that purports to excise any provision that would limit recovery by an injured third party renders an excess insurer's policy primary as a matter of law when it is the first solvent insurer. We do not see a federal public policy that would compel the district court's construction because the Act allows for self-insurance and does not require the MCS-90 in this contract.

The MCS-90 endorsement is only required when an insurance policy is used to satisfy the Act.[8] Federal public policy appears unconcerned with the possibility of an insolvent but self-insured carrier, for the only assurance the regulations require is the Federal Motor Carrier Safety Administration's satisfaction that the carrier is qualified.[9] "When 'self-insurance' is involved, there is no security for the protection of the public other than the self-insured's financial strength . . . ." Commentary on Final Rule, 46 Fed. Reg. 30974, 30981 (June 11, 1981). It necessarily follows that under this scheme, there may be circumstances in which an injured party will not be able to recover from a self-insured carrier. We are therefore unpersuaded that federal public policy favors—much less compels—the district court's construction.

---

[7] 280 F.3d 532, 536 (5th Cir. 2002).

[8] § 387.7(d)(1); *see also Kline v. Gulf Ins. Co.*, 466 F.3d 450, 452 (6th Cir. 2006) (". . . Builders Transport self-insured up to the minimum coverage, and Gulf did not need to [include the endorsement.]").

[9] § 387.309.

5

III.

The resolution of this case depends entirely on the terms of the MCS-90 endorsement. We begin with the boxes at the top of the endorsement. The endorsement here had the second box checked and read:

> This insurance is excess and the company shall not be liable for amounts in excess of $1,000,000 for each accident in excess of the underlying limit of $1,000,000 for each accident.

Wells explains that this part of the form is intended not to change the later language that overrides the underlying policy excess limits, but to allocate the responsibility among insurance companies—it would clarify how two insurers divide coverage of the required guarantee, for example, if each insurer insured a $500,000 policy. That, of course, does not explain why Gulf's policy filled $1,000,000 in the blanks. While the language here may be confusing, it does clearly deny excess coverage below $1,000,000, and that argues against imposing primary coverage on Gulf under any circumstance.

The endorsement continues: "In consideration of the premium stated in the policy . . . the insurer (the company) agrees to pay, *within the limits of liability described herein* any final judgment recovered against the insured . . . regardless of whether or not each motor vehicle is specifically described in the policy [and regardless of where the negligence occurs]."[10] The endorsement specifically retains the policy's *liability limits*—that is, the policy's monetary parameters. What the endorsement alters are *coverage limits*—that is,

---

[10] § 387.15 (emphasis added).

vehicles and persons insured, conduct insured against, and the like.  The Second Circuit

recognized this in *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*,[11] where it stated

that "[t]he policy provided coverage only for scheduled vehicles, but the trailer was not

included on the schedule. The policy, however, also included an MCS-90 endorsement,

which extends the insurance coverage to all motor vehicles owned by [the insured],

regardless of whether the vehicle is listed on the schedule."  Further, the court rejected the

insurer's argument that it did not owe indemnity because its insured was not negligent.  *Id*.

Commentators also recognize this effect of the endorsement.  1 WILLIAM E. KENWORTHY,

TRANSPORTATION SAFETY AND INSURANCE LAW § 19.02, at 19-13–19-14 (3d ed. 2006);  2

DAVID N. NISSENBERG, LAW OF COMMERCIAL TRUCKING § 14.07, at 789 (3d ed. 2003); John

K. Gisleson, *Prosecution of Fraud and Civil RICO Claims in the Involuntary Insurance

Market*, 29 TRANSP. L. J. 1, 3 (2001).  And this coverage limit alteration is consistent with

the endorsement's purpose.

The endorsement, originally promulgated by the Interstate Commerce Commission

("ICC"), was directed at trucking companies' practice of using leased or borrowed vehicles,

which often resulted in evasion of safety requirements and confusion about financial

responsibility for damage caused by the operation of the vehicles.  *Empire Fire & Marine

Ins. Co. v. Guar. Nat'l Ins. Co.*[12]  The endorsement "had its origin in the ICC's desire that the

---

[11]   930 F.2d 258, 260 (2d Cir. 1991).

[12]   868 F.2d 357, 362–63 (10th Cir. 1989).

7

public be adequately protected when a licensed carrier uses a leased vehicle to transport goods pursuant to an ICC certificate." *Id.*

The endorsement also provides that "no condition, provision, stipulation, or limitation contained in the policy [or] this endorsement . . . shall relieve the [insurer] from liability or from payment of any final judgment, *within the limits of liability herein described . . . .*"[13] But even this language retains the "limits of liability described herein" clause. The retention of that clause can have no meaning at all if the surrounding language is read to excise the policy's liability limits.

Further, the endorsement clearly provides that the insurer must pay the described judgment "irrespective of the financial condition, insolvency or bankruptcy of the insured . . . [but] [t]he insured agrees to reimburse the [insurer] for any payment . . . that the [insurer] would not have been obligated to make under the provision of the policy except for the agreement contained in this endorsement."[14] The district court focused on this language, but read it in isolation. Under the endorsement's coverage limit alteration, the insurer is required to pay a judgment even if, for example, the policy does not list a vehicle as covered. The endorsement thus broadens the insurer's duty to pay, and the insured incurs a duty to reimburse the insurer.

The Sixth Circuit has decided this same question in *Kline v. Gulf Ins. Co.*[15] and

---

[13]  § 387.15 (emphasis added).

[14]  *Id.*

[15]  466 F.3d 450 (6th Cir. 2006).

concluded that the endorsement did not require Gulf to drop below its liability floor.  In *Kline*,[16] the plaintiff obtained a $3.2 million judgment against BTI.  Under BTI's insurance arrangement, BTI would have paid $2 million (self-insurance of $1 million plus a $1 million dollar deductible under its policy with Reliant), Reliant as first excess insurer would have paid $1 million, and Gulf as second excess insurer would have paid $200,000.  Because of BTI's insolvency, however, the plaintiff only received $1.2 million—$1 million from Reliant and $200,000 from Gulf under their respective policies.  The plaintiff sued Gulf and argued that it should be liable from dollar one based on the endorsement.  The district court disagreed, and in affirming, the Sixth Circuit held that the "limits of liability described herein" clause preserved the policy's liability limits.[17]  The Sixth Circuit also recognized that the purpose of the endorsement is to ensure compliance with the regulations and that regardless of BTI's insolvency, since it was self-insured, the purpose of the regulations was satisfied.[18]

In contrast, the cases Wells relies on in support of his theory involve MCS-90 endorsements necessary to satisfy the Act or primary insurance policies.  In *Travelers Indem. Co. v. W. Am. Specialized Transp. Servs.*,[19] the carrier satisfied the $5 million minimum responsibility level with both primary and excess insurers, requiring the endorsement in the

---

[16]  *Id*. at 452.

[17]  *Id*. at 455.

[18]  *Id*.

[19]  409 F.3d 256 (5th Cir. 2005).

excess insurer's policy. In *T.H.E. Ins. Co. v. Larsen Intermodal Servs.*,[20] there was a reimbursement dispute after the insurance company paid the claim. *Canal Ins. Co. v. Carolina Cas. Ins. Co.*,[21] and *Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*,[22] both involved a dispute between two insurers where one insurer's policy contained endorsement and the other's did not. In *Am. Inter-Fidelity Exch. v. Am. Re-Insurance Co.*,[23] an insured failed to pay its insurer reimbursement, and a reinsurer disputed its duty to pay the insurer. And *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*,[24] involved a federally mandated MCS-90 endorsement in a primary insurance policy. These cases are therefore inapposite.

IV.

We join the Sixth Circuit and hold that where an excess insurer's coverage is not required to satisfy a carrier's minimum level of financial responsibility under the Act, the form MCS-90 endorsement does not require the excess carrier to satisfy a judgment below its liability floor simply because it is the first solvent insurer.

Accordingly, we reverse the district court's judgment and render judgment for Gulf Insurance Company.

---

[20]  242 F.3d 667 (5th Cir. 2001).

[21]  59 F.3d 281 (1st Cir. 1995).

[22]  868 F.2d 357 (10th Cir. 1989).

[23]  17 F.3d 1018 (7th Cir. 1994).

[24]  930 F.2d 258 (2d Cir. 1991).

10

REVERSED and RENDERED.