CAROLINA CASUALTY INSURANCE COMPANY, Plaintiff–Appellant,

v.

Tymer YEATES and Shari Yeates, Defendants–Appellees.

No. 07–4019.

United States Court of Appeals, Tenth Circuit.

July 15, 2008.

Heinz J. Mahler (Stephen D. Kelson with him on the briefs), Kipp and Christain, P.C., Salt Lake City, UT, for Appellant.

Jesse C. Trentadue, Suitter Axland, PLLC, Salt Lake City, UT, for Appellees.

Before TYMKOVICH, GORSUCH, Circuit Judges, and PARKER, Senior District Judge.*

TYMKOVICH, Circuit Judge.

This insurance case asks us to consider the scope of a federal regulation that requires interstate trucking companies to obtain insurance covering motor vehicle accidents. Tymer and Shari Yeates sued Bingham Livestock Transportation for injuries arising from a truck accident. Carolina Casualty provided a general liability insurance policy to Bingham Livestock that included a provision required by federal regulation covering final judgments for negligence from motor vehicle accidents. Bingham Livestock also had motor vehicle insurance with State Farm Insurance Company.

After State Farm tendered its policy limits to the Yeateses, Carolina Casualty filed a declaratory judgment action claiming that it was no longer liable for any additional damages arising from the accident. The district court granted summary judgment in favor of the Yeateses, concluding that under controlling Tenth Circuit law, *Empire Fire & Marine Insurance Company v. Guaranty National Insurance Company*, 868 F.2d 357 (10th Cir.1989), Carolina Casualty's policy provided primary insurance covering the accident and thus Carolina Casualty may be liable for any judgment against Bingham Livestock resulting from the Yeateses' accident. We agree with the district court that *Empire Fire* sides with the Yeateses.

Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

The underlying facts are not in dispute. In 2003 Tymer Yeates was severely injured when a car his wife was driving was involved in a head-on collision with a livestock truck owned by Bingham Livestock. Yeates and his wife sued Bingham Livestock and the truck driver in state court. Bingham Livestock carried two insurance policies relevant to this accident, one issued by State Farm and one issued by Carolina Casualty. Bingham Livestock notified both carriers of the claim.

State Farm's policy specifically insured the truck involved in the accident and it tendered the policy limit of $750,000 to the Yeateses. Carolina Casualty's policy, however, was a general liability policy covering a variety of commercial claims. While the policy did not specifically cover the accident vehicle, it did include a so-called MCS–90 endorsement, which provided that Carolina Casualty would pay up to $1,000,000 for "any final judgment recovered against [Bingham Livestock] for pub-

* Hon. James A. Parker, Senior U.S. District Court Judge, District of New Mexico, sitting by designation.

lic liability resulting from negligence in the operation, maintenance or use of motor vehicles." R., App. 23 (MCS–90 endorsement).

Federal law requires common carriers to obtain insurance to cover motor vehicle accidents. Federal regulations specifically require all interstate carriers to maintain insurance or another form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles" under the carrier's permit. 49 C.F.R. § 387.301(a); see also id. § 387.7. To satisfy this insurance requirement, the regulations require the attachment of a specific endorsement to each insurance policy of the carrier, the MCS–90 endorsement, which guarantees payment in the amount of at least $750,000 per accident.[2] 49 C.F.R. §§ 387.7, 387.9; see 2 David N. Nissenberg, Law of Commercial Trucking, § 14.07[7] at 788 (3d ed. 2003) ("Every liability policy covering a motor carrier must contain the MCS–90 endorsement.").

The endorsement "eliminates the possibility of a denial of coverage by requiring the insurer to pay any final judgment recovered against the insured for negligence in the operation, maintenance, or use of motor vehicles subject to federal financial responsibility requirements, even though the accident vehicle is not listed in the policy." 1 Auto. Liability Ins. 4th § 2:12 (2008). It ensures payment by amending the insurance policy to which it is attached so that "no condition, provision, stipulation, or limitation contained in the policy ... shall relieve the company from liability" from paying the amount specified in the endorsement. R., App. 23.

While the Yeateses' negligence case was pending in Utah state court, Carolina Casualty filed this declaratory judgment action. It sought a ruling that it had no liability to the Yeateses under the general liability policy because (1) State Farm had already tendered its $750,000 policy limits; (2) federal regulations require a minimum of $750,000 for accident claims; and (3) therefore, the MCS–90 endorsement would not be needed to provide minimum coverage. The district court rejected this argument on the basis of our holding in *Empire Fire*, and granted summary judgment in favor of the Yeateses that the Carolina Casualty policy provides primary insurance for the accident under the endorsement and thus Carolina Casualty may be required to pay any final judgment resulting from the Yeateses' accident.

This appeal followed.

## II. Discussion

### A. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

---

**2.** Although not relevant to this appeal, the regulations do allow for limited exceptions to the MCS–90 endorsement requirement for carriers who have an approved form of finan- cial guaranty, such as self-insurance, for an equivalent amount of financial responsibility. See 49 C.F.R. §§ 387.7, 387.309.

### B. *Empire Fire*

In *Empire Fire* we discussed the application of the MCS–90 endorsement in detail, and because *Empire Fire* controls the interpretation of the endorsement we find it helpful to review the case in some depth.

#### 1. Empire Fire *overview*

*Empire Fire* addressed a dispute between two insurance companies, Guaranty Insurance Company and Empire Fire Insurance Company, about which had primary insurance coverage for a truck accident. The Guaranty Insurance policy contained a clause limiting liability to excess coverage for accidents involving vehicles not owned by the insured. But the policy also contained an MCS–90 endorsement as required by federal regulations. The Empire Fire policy provided primary coverage, and did not contain an MCS–90 endorsement. Nonetheless, based on the MCS–90 endorsement, the district court concluded Guaranty Insurance was "the primary insurer as a matter of law over any other insurer." *Empire Fire*, 868 F.2d at 359.

We reversed, concluding that while the MCS–90 endorsement made Guaranty Insurance's coverage *a* primary policy as a matter of law, it did not make its coverage first in line as to other primary insurers. The policy provided primary coverage for the accident along with Empire Fire, but did not necessarily make the policy "primary as a matter of law over Empire's policy." *Id.* at 361. In reaching this conclusion, we considered three competing interpretations of the scope of the MCS–90 endorsement:

(1) The ... endorsement makes the insurance policy to which it is attached primary as a matter of law over all other insurance policies that lack similar provisions.

(2) [T]he endorsement only negates limiting provisions in the policy to which it is attached, such as an "excess coverage" clause, but does not establish primary liability over other policies that are also primary by their own terms.

(3) [T]he endorsement applies only to situations in which a claim is being asserted by a shipper or a member of the public, and that the endorsement does not apply when allocating liability among insurance carriers.

*Id.*

We adopted the second approach. This approach entails a textual application of the MCS–90 endorsement language to the policy to which it is attached, without any consideration of other insurance policies:

A straightforward reading of the [MCS–90 endorsement] suggests only that it negates any clauses in the body of the policy to which it is attached that would have the effect of limiting that insurance carrier's liability. That is, it deletes limiting clauses in the policy to which it is attached, but it does not create new, additional obligations in the policy, nor does it purport to limit or delete clauses in other policies issued by other insurance companies that may also have contractually assumed primary liability for the risk involved.

*Id.* at 363.

Applying these principles, we concluded that both Guaranty Insurance's policy and Empire Fire's policy were available to cover the accident. But we did not purport to decide how risk or liability would be spread between the two insurance policies. Instead, we determined, "once limiting language is read out ... the two policies then must be compared pursuant to traditional state insurance and contract law principles to determine how liability should be allocated" among the insurers. *Id.* at 368.

The method of applying the MCS–90 endorsement set out in *Empire Fire* has

been reiterated by subsequent Tenth Circuit cases examining the endorsement. *See Adams v. Royal Indem. Co.*, 99 F.3d 964, 970 (10th Cir.1996) ("[O]ur decision in *Empire Fire* [ ] explicitly held that the effect of the endorsement negates any clauses in the body of the policy to which it is attached that would have the effect of limiting that insurance carrier's liability." (internal quotation omitted)); *see also Campbell v. Bartlett*, 975 F.2d 1569, 1581 (10th Cir.1992); *Budd v. Am. Excess Ins. Co.*, 928 F.2d 344, 347 (10th Cir.1991); *Railhead Freight Sys. v. U.S. Fire Ins. Co.*, 924 F.2d 994, 995 (10th Cir.1991) (describing result under *Empire Fire* as rendering policy modified by an MCS–90 endorsement "co-primary").

#### 2. Application

■ Applying *Empire Fire*, we conclude that Carolina Casualty's policy as amended by the endorsement may be available to cover a final judgment arising from the accident. By its terms, two conditions must be satisfied before the endorsement will operate to amend the underlying policy: (1) there must be a covered accident, and (2) the underlying policy must preclude coverage for that accident. *See* R., App. 23. When these conditions are met, the MCS–90 endorsement operates to "amend" the underlying policy and guarantee payment "regardless" of limiting provisions in the underlying policy. *Id.* For clarity we review each condition in more detail.

■ The accident involving the Yeateses easily meets the first condition. The endorsement provides coverage for any final judgment "resulting from negligence in the operation, maintenance or use of" motor vehicles of the insured party. R., App. 23. Carolina Casualty does not dispute that this provision of the MCS–90 endorsement has been met—the Yeateses' injuries were from alleged negligence in operating one of Bingham Livestock's vehicles.

The second condition is also easily met since Carolina Casualty admits the underlying policy would deny coverage. The general liability policy only covers specifically listed vehicles, and the accident vehicle in this case was not listed. In fact, Carolina Casualty denied coverage for the Yeateses' accident because the vehicle involved in the accident was "not specifically listed as [a] covered vehicle[ ] in the Policy nor [was it] otherwise included in the specifically scheduled and described tractors and trailers of the policy." R., App. 42, ¶ 3. Without the MCS–90 endorsement, this provision would preclude coverage for the Yeateses' accident. With these two conditions met, under *Empire Fire*, the MCS–90 endorsement amends the underlying insurance policy so as to negate any limiting provisions. In short, Carolina Casualty's policy provides primary insurance coverage for the accident under the terms of the endorsement.

■ This holding is necessarily limited, and, we emphasize, ultimate financial responsibility is not at issue in this case. The district court's order is properly limited to stating that Carolina Casualty *may* be liable for any judgment in this case, in part because insurers remain free to allocate ultimate liability among themselves, so long as it does not "adversely affect the rights of the public or shippers." *Empire Fire*, 868 F.2d at 366. This allocation often involves a comparison of competing insurance policies' "other insurance" clauses. *See generally* Ostrager & Newman, Handbook on Insurance Coverage Disputes, § 11 (9th ed.1998) (describing traditional rules for allocating liability among insurers). Nothing in the MCS–90 endorsement, nor in *Empire Fire*, affects the insurers' ability to contractually allocate liability as between multiple insurance pol-

icies which cover the same risk. We stated in a case following *Empire Fire* that the MCS–90 endorsement "is not intended to preclude insurers and carriers or multiple insurers from contractually apportioning ultimate liability among themselves as they wish." *Adams,* 99 F.3d at 969. Ultimate allocation of liability as between Carolina Casualty and State Farm is simply not before us in this case.

Carolina Casualty argues we should not apply *Empire Fire* for three reasons. First, it contends the MCS–90 endorsement was never "triggered" under the facts here and therefore does not supply coverage. Second, it contends the MCS–90 is a surety provision which does not provide additional coverage when a primary policy has already provided coverage. Finally, it challenges the continued viability of *Empire Fire* and asks that we ignore it. We disagree with each of these arguments.

*a. The MCS–90 endorsement does not require a "trigger"*

■ Carolina Casualty contends the MCS–90 endorsement is not "triggered" when the injured person receives insurance benefits at least equal to the minimum amount required for the MCS–90 endorsement. It argues, since the Yeateses received $750,000 from State Farm, and the regulatory minimum is $750,000, under 49 C.F.R. § 387.9, they are not entitled to any additional insurance benefits. Under this theory "the MCS–90 is not triggered [because] there was other coverage which should have provided the amount of financial responsibility required by the [Act]." Aplt. Br. at 20. For several reasons, this theory is unpersuasive.

First, the language of the endorsement does not support the contention that it is "triggered" by any conditions outside the policy. *See* R., App. 23. No language limits payment to the injured person conditioned on coverage by other policies. The terms of the MCS–90 endorsement are clear—the endorsement "amends" the underlying policy, requiring payment of final judgments *"regardless* of whether or not each motor vehicle is specifically described in the policy." R., App. 23 (emphasis added). Carolina Casualty's policy provides coverage regardless of other policies.[3]

Second, under *Empire Fire,* the MCS–90 endorsement is construed without comparing it to other insurance policies, even if those other policies are themselves primary. In fact, Carolina Casualty's "trigger" argument is but a variation on one of the other methodologies we expressly rejected in *Empire Fire*—that the clause does not apply when allocating liability among insurance companies. *See Empire Fire,* 868 F.2d at 361. Carolina Casualty asks us to consider its coverage alongside State Farm's payment and decide the MCS–90 endorsement does not apply, regardless of the terms of the endorsement. *Empire Fire* does not allow us to do so. In *Empire Fire,* we declined to interpret the MCS–90 endorsement to give it "only selective application," and instead concluded "the parties may enter into contractual agreements among themselves that will be enforced so long as such agreements do not adversely affect the rights of the public and shippers." *Id.* at 366. After reviewing precedents outside the Tenth Circuit using a variation of the trigger theme we

---

**3.** Carolina Casualty points to *Kline v. Gulf Ins. Co.,* 466 F.3d 450 (6th Cir.2006), as contrary authority. In *Kline,* the policy at issue was for pure excess, and thus coverage on the underlying policy was never refused, a necessary condition for the endorsement to provide coverage. *See id.* at 452, 453. Here, the endorsement stated the underlying policy was providing "primary" coverage. Nothing prevents a carrier from providing pure excess coverage, when another carrier provides primary coverage, as was the case in *Kline.*

"decline[d] to follow these cases ... insofar as they disregarded the effect of an [MCS–90] endorsement on the policy to which it is attached when the public or a shipper is not involved in the dispute." *Id.* at 367. Carolina Casualty's trigger argument is the functional equivalent of asking this court to ignore the MCS–90 endorsement in disputes between insurers, and only give effect to the endorsement when disputes involve members of the public, a construction foreclosed by *Empire Fire.*

Third, apart from the textual problems, the trigger argument creates undesirable incentives. MCS–90 insurers would have an incentive to withhold payment from injured persons in situations where there were two potentially liable insurers. In those situations, whichever insurer paid first would relieve the other insurer of any liability, creating a situation where neither insurer would want to provide coverage voluntarily. This result would undercut the very purpose behind the MCS–90 endorsement.

Finally, Carolina Casualty's trigger argument makes little sense in a case such as this, where there is a coverage gap between Carolina Casualty's policy limit and the amount paid by State Farm. Carolina Casualty argues the MCS–90 endorsement is not triggered in this case because the Yeateses received $750,000 from State Farm. However, the Carolina Casualty endorsement was for coverage up to $1,000,000. While it is true the Yeateses received the minimum coverage allowed by law, that does not mean Carolina Casualty can avoid higher coverage limits because a second carrier provided a lesser benefit that happened to coincide with the regulatory minimum of $750,000. This would ignore the contractual language of the policy and create a ceiling where the endorsement established only a floor.

In sum, we reject Carolina Casualty's arguments that its policy is not available because of State Farm's previous payments.

### b. MCS–90 endorsement as a surety

Carolina Casualty alternatively contends that the MCS–90 endorsement "acts as a surety only" and is "not an insurance policy." Aplt. Br. at 30. It argues the endorsement operates to make it an insurer of last resort, operating only when there is no other insurance available.

■ In general, a surety is "a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." 74 Am.Jur.2d Suretyship § 1 (1974). Because the MCS–90 endorsement operates to guarantee payment to the public, with an indemnity right against the insured, courts have occasionally described the endorsement as creating a surety as between the insured party and the insurer. *See, e.g., Travelers Indem. Co. v. W. Am. Specialized Transp. Servs.,* 409 F.3d 256, 260 (5th Cir.2005) (analyzing the MCS–90 endorsement as a surety).

■ Carolina Casualty's surety argument is also foreclosed by *Empire Fire.* While the relationship between Carolina Casualty and Bingham Livestock has the earmarks of a suretyship relationship, that fact does not relieve Carolina Casualty of its primary insurance obligation to cover the Yeateses' accident. Under the MCS–90 endorsement and *Empire Fire,* Carolina Casualty may be able to seek recovery from Bingham Livestock for any payments made under the endorsement. The rights between the insurance company and the insured do not provide a basis for concluding that the policy is not available to provide primary coverage to the injured third party. Thus, for the same reasons the trigger argument is unpersuasive under *Empire Fire,* we reject the contention that

State Farm's prior payment relieves Carolina Casualty of coverage for the accident on account of the suretyship status of the endorsement.

### c. *Empire Fire as controlling precedent*

Finally, Carolina Casualty asks us to reject the authority of *Empire Fire,* calling the precedent questionable and flawed under the reasoning adopted by the majority of other circuit courts. But, in reaching its decision the *Empire Fire* panel extensively and carefully reviewed competing views in circuit court precedent regarding the scope of the MCS–90 endorsement, 868 F.2d at 361–62, 366–68, before selecting the rule it announced. To be sure, *Empire Fire* has been a minority position for quite some time. *See generally* Appleman on Insurance Supp. to § 4467 (Supp.2008) (describing split). But even if we were persuaded that the holding is wrong, we are bound by *Empire Fire* unless it is changed by an en banc court of the circuit. *See United States v. Walling,* 936 F.2d 469, 472 (10th Cir.1991) ("One panel of the court cannot overrule circuit precedent.").

### III. CONCLUSION

Accordingly, we AFFIRM the district court's disposition below.